MASON B. SPOFFORD, ADMINISTRATOR, &c., OF WILLIAM RYAN, DECEASED, PLAINTIFF AND RESPONDENT, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT AND APPELLANT.

Argued March 20, 1916—Decided June 19, 1916.

1. The relation of carrier and passenger, when established, does not terminate until the passenger has reached his destination and alighted from the train upon which he has been riding, and has had a reasonable time and opportunity within which to leave the place where the passengers are discharged.

2. It is the duty of a railroad company to use reasonable care to provide its passenger a safe place and way to alight at the place of destination, and the company is liable for an accident happening by reason of the neglect of such duty to a passenger who has alighted from a car at rest in a station, and before he has had a reasonable time and opportunity to leave the premises of the company, if the circumstances are such as to induce the passenger to believe that it was safe for him to alight at the place and in the way he did.

3. Whether a person who has alighted from a standing train at a station, and who is crossing the railway tracks by a planked way provided by the company for that purpose, after the train has moved out, is still a passenger entitled to so cross without looking and listening, is a question of fact for the jury, where, under the proof, reasonable men may differ as to whether he was proceeding from his place of alighting to a place of safety within a reasonable time after he had alighted from the train.

On appeal from the Hudson County Circuit Court.

For the appellant, *Charles E. Miller* and *Edwards & Smith*.

For the respondent, *William D. Salter* and *Aaron A. Melniker*.

The opinion of the court was delivered by

TRENCHARD, J. This suit was brought by the administrator of William Ryan, deceased, to recover damages for his death alleged to have been caused by the negligence of the defendant company.

The evidence at the trial justified the jury in finding, among others, the following matters of fact:

Ryan, the decedent, a resident of New York City, was a passenger on the train of the defendant company running from Jersey City to Forty-ninth street, Bayonne, and points beyond, and due to arrive at Forty-ninth street at eleven-six P. M.

He alighted at the latter station and was killed by an express train running in the opposite direction. This express did not stop at Forty-ninth street, but by its running time was due to pass there about eleven-seven P. M.

The station building at Forty-ninth street is on the west side of the tracks. There are four tracks there. The two nearer the station building carrying the trains from Jersey City; those upon the other side carrying the traffic to Jersey City.

The train from which the decedent alighted was a local train running upon the second track, counting from the station building. The train which struck decedent was running upon the third track.

Aside from the light which came from the station window, the only illumination at the station at the time came from four gas lights of the ordinary gas-tip-burner type, one at each corner of the station building. Across the tracks, on the easterly side, some distance away, was the Pennsylvania railroad yard, with lights here and there, presenting at night somewhat the appearance of a built-up section. In front of the station, opposite the bay window, there was a plank walk eight feet wide running across the tracks from the station to the westerly rail of the far track. The remaining space in front of the station was filled in with cinders between the tracks and rails. There was no fence or gates between the tracks, no tunnel, nor overhead bridge. There was a crossing bell at the station which rang for trains coming from Jersey City but not for trains going towards Jersey City.

The decedent got off the train on the side opposite the station building. When struck he was upon the plank walk extending across the track on which the express train was

running. He had a return coupon to New York in his pocket.

The trial resulted in a verdict for the plaintiff and the defendant appeals from the consequent judgment.

The sole complaint now is that the trial judge declined to nonsuit and to direct a verdict for the defendant.

We are of the opinion that such motions were properly denied.

It is admitted that the decedent was a passenger upon the defendant's train.

The relation of carrier and passenger, when established, does not terminate until the passenger has reached his destination and alighted from the train upon which he has been riding, and has had a reasonable time and opportunity within which to leave the place where the passengers are discharged. *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 52 *N. J. L.* 169.

Consequently it is the duty of a railroad company to use reasonable care to provide its passengers a safe place and way to alight at the place of destination, and the company is liable for an accident happening by reason of the neglect of such duty, to a passenger who has alighted from a car at rest in a station, and before he has had a reasonable time and opportunity to leave the premises of the company, if the circumstances are such as to induce the passenger to believe that it was safe for him to alight at the place and in the way he did. *Falk* v. *New York, Susquehanna and Western Railroad Co.,* 56 *N. J. L.* 380; *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 52 *Id.* 169.

Tested by this rule we think the question of the liability of the defendant company was for the jury.

It was admitted that the train upon which decedent was riding had stopped at the station for the purpose of discharging passengers. Whether the circumstances were such as to induce the decedent to believe that it was safe for him to get off the train on the side away from the station building was a jury question. The evidence tended to show that he was not familiar with the station or its surroundings. It is

said that he intended to visit a person living on the west side of the tracks, and that the city was not built up on the east side upon which he alighted. That may be so. But it was permissible from the evidence to conclude that the station was not well lighted and the night was dark, and it may well be that the decedent was misled by the distant lights in the railroad yard on the east side, and so naturally made the mistake of alighting upon that side. A stranger arriving at his station cannot always stop to take into consideration all the surroundings. The fact that there was a platform on the side where he alighted, leading across the track where he was hit, was another one of the circumstances all of which rendered it possible and legitimate for the jury to conclude that the circumstances were such as to induce the decedent to believe it safe for him to alight as he did. That being so, the question arises was it open to the jury to find that the defendant company failed in the performance of its duty to use reasonable care to render safe the place and way used by the decedent? We think that it was. It was a permissible assumption that the defendant company knew or ought to have known that a passenger upon the local was likely to get off on the east side of the train in the absence of notice to the contrary. The company knew that the express train was due to pass on the adjacent parallel track on the east side at the time or shortly after the local discharged its passengers. Now we do not say that it was the positive duty of the company to have provided a fence between the tracks; nor do we say that it was its positive duty to have provided gates upon the local train to prevent passengers from alighting upon the side along which the express would pass. But we do say that it was open to the jury to find that there was a want of reasonable care in its failure to take any precaution whatever. The jury may well have found that ordinary prudence upon the part of the railroad company, under such circumstances, required it to inform its passengers which of the two ways of alighting was intended to be used upon that occasion, or to in some way obstruct the one not so intended in such manner as to give notice of the fact.

But it is contended that "under the evidence the defendant owed no duty to the decedent at the time of his injury other than the duty owing to a mere licensee of refraining from willful or wanton injury, because he had ceased to be a passenger."

But we think that it did not conclusively appear that the decedent had ceased to be a passenger.

The defendant rests its contention in this regard entirely upon the claim that it conclusively appeared that the express passed the Forty-ninth street station three minutes after the local, upon which decedent was a passenger, had pulled out. But this contention is not well founded in fact. It did not so conclusively appear. No witness assumed to definitely fix the time of passing of the express with relation to the clearance of the local. There was evidence that the local was due at Forty-ninth street at eleven-six P. M.; that the express was due to pass Eighth street at eleven-two P. M., and generally took about five minutes to run to Forty-ninth street, which would bring it to Forty-ninth street about eleven-seven P. M. or just about the time the local was discharging its passengers. This was the testimony of the company's engineer. The witness Kiernan testified that there was usually about thirty seconds between the passing of these trains at the Forty-ninth street station. This and other evidence, which it is unnecessary to quote, permitted of the inference that the express passed at the time, or very shortly after, the local discharged its passengers.

Concededly the decedent alighted upon the planked way. This led across the track upon which the express was coming. It was a fair inference that decedent was either crossing or momentarily hesitating, trying to find his way in the dark.

If the train from which he had alighted had not yet pulled out, of course the argument of the defendant upon this phase of the case has no basis for its support. If it had pulled out, a jury question was presented. The rule is this: Whether a person who has alighted from a standing train at a station, and who is crossing the railway tracks by a planked way provided by the company for that purpose, after the train from

which he has alighted has moved out, is still a passenger entitled to so cross without looking or listening, is a question of fact for the jury, where, under the proof, reasonable men may differ as to whether he was proceeding from his place of alighting to a place of safety within a reasonable time after he had alighted from the train.  *Atlantic City Railroad Co.* v. *Kiefer,* 75 *N. J. L.* 54.

We conclude, therefore, that the case was properly submitted to the jury.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 15.

*For reversal*—None.